# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA W. KRUGER, # K-50216,    )
                                      )

              Plaintiff,         )
                                        )

     vs.                         )        Case No. 18-cv-512-DRH
                                        )

JOHN BALDWIN,               )
JACQUELINE A. LASHBROOK,   )
KIMBERLY BUTLER,         )
WILLIAM REES,              )
ALEX D. JONES,            )
T. BRADLEY,                )
SGT. SHEMONIC,           )
HOWARD HARNER,         )
ELDON KENNELL,         )
STEPHEN C. KEIM,        )
JOHN DOE #1 (Mail Room Supervisor))
JOHN DOE #2,               )
JOHN DOE #3,               )
JOHN DOES #4-11 (Religious Practice )
     Advisory Board, IDOC),   )
JOHN DOE #12,             )
and JOHN DOE #13,        )
                                     )

             Defendants.     )

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff raises a number of claims, including the improper opening of his "legal" mail outside his presence, the rejection of his incoming publications and religious material, retaliation for his litigation and grievance activity, and denial of his right

1

to practice his religion.  This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.  Additionally, the Court must consider whether Plaintiff's diverse claims against various Defendants may properly proceed in the same lawsuit.  This initial review reveals that several of Plaintiff's claims are not properly joined in this action.  These improperly joined claims shall therefore be severed into separate cases, where they shall undergo the required § 1915A evaluation.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, one of the claims that shall remain in this action survives threshold review under § 1915A.

## The Complaint

Plaintiff was transferred from Pontiac Correctional Center to Menard in October 2015. At the time of his transfer, he had 3 civil rights lawsuits pending in the Central District of Illinois against IDOC officials. In connection with those cases, Plaintiff received a considerable amount of correspondence from the Illinois Attorney General's ("IAG") office. He notes that the Illinois Administrative Code defines "legal mail" as including correspondence to or from the IAG. (Doc. 1, p. 9). John Doe mail room staff (John Does #1 and #13) [1] opened and

---

[1] Plaintiff identifies 13 separate John Doe Defendants in his list of parties. (Doc. 1, pp. 4-5). However, he does not always identify these John Doe Defendants by their assigned numbers in the narrative portion of his Complaint, making it difficult for the Court to discern which Doe was allegedly involved in a particular instance of misconduct. The Court will therefore associate the various claims with the John

presumably read 21 pieces of Plaintiff's incoming mail from the IAG, postmarked between April 5, 2016, and January 20, 2017, without Plaintiff being present. *Id.* According to Plaintiff, Menard mail room staff and John Doe #1 (Mail Room Supervisor) had a policy to open all incoming mail from the IAG office. (Doc. 1, p. 10). Butler (former Menard Warden and current IDOC Deputy Director) and Lashbrook (current Menard Warden) knew of this policy because of numerous prisoner complaints/grievances, but failed to intervene to stop this "illegal practice." (Doc. 1, p. 10).

Plaintiff further alleges that John Does #1 and #13 opened his mail from the IAG, as well as delayed processing his regular mail, in retaliation for Plaintiff's lawsuits against IDOC officials and his 2016 grievances against mail room staff. (Doc. 1, p. 10).

Plaintiff describes several specific incidents when incoming published material was rejected. In February 2016, Bradley (Publication Review Officer) and then-Warden Butler denied Plaintiff a book he had ordered (*The Truth: An Uncomfortable Book about Relationships*). (Doc. 1, p. 11). Plaintiff asserts that this book was not on the "banned" list and there was no legitimate penological reason to reject it. In June 2016, a John Doe[2] mail room worker refused to deliver 4 football preview magazines sent to Plaintiff by his brother. (Doc. 1, p. 11). Plaintiff also claims that the rejection of the football magazines was in

---

Doe Defendant(s) who appear to have been responsible, based on Plaintiff's descriptions. John Doe #1 is the Mail Room Supervisor, and John Doe #13 is the staff member who opened and read Plaintiff's legal mail outside his presence. (Doc. 1, pp. 4-5).

[2] Plaintiff did not include this John Doe among his list of parties, therefore, the Court shall designate the unknown Defendant from this June 2016 incident as "John Doe #14."

retaliation for grievances and/or complaints he had made earlier in 2016 against mail room staff. *Id.* On July 20, 2016, Bradley and Shemonic (Publication Review Officer), along with Butler, rejected Plaintiff's June 2016 issue of *Prison Legal News*. (Doc. 1, p. 12).

On April 14, 2017, John Doe #3 refused to deliver a book (*Tools for Titans*) to Plaintiff. (Doc. 1, p. 11). On April 28, 2017, John Doe #2 rejected an incoming package of 5 religious greeting cards, which Plaintiff had purchased after Warden Lashbrook had given him prior approval for the material. *Id.* These rejections also amounted to unconstitutional retaliation, according to Plaintiff, and the rejection of the religious cards violated the RLUIPA.[3] (Doc. 1, pp. 11-12).

The Complaint describes 2 incidents which allegedly violated Plaintiff's First Amendment right to freedom of association. On March 21, 2016, Rees (former Acting Warden of Operations) banned Plaintiff from receiving visits from his twin brother, Joseph Kruger. (Doc. 1, p. 11). On June 7, 2017, Jones (Acting Warden of Operations) imposed another ban on visits from Joseph Kruger. *Id.*

At an unspecified time during or before 2016, Butler and John Doe #12 authorized the construction of 2 adjoining "attorney legal call" booths in the Menard Chapel. (Doc. 1, p. 12). The booths, however, did not provide privacy for privileged telephone conversations between a prisoner and his attorney. Plaintiff had calls with his attorney on 2 occasions (once in 2016 and once in 2017), where he was "forced to reveal privileged legal information" regarding his criminal

---

[3] The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1.

appeal, when his call was overheard by another prisoner. *Id.* Plaintiff indicates that Menard staff could also hear these conversations.

Plaintiff adheres to the Odinism-Asatru religion. (Doc. 1, p. 12). He claims that Baldwin (IDOC Director), Harner (Menard Chaplain), Kennell (Pontiac Correctional Center Chaplain), Keim (IDOC Chief Chaplain), Butler, Lashbrook, and IDOC's Religious Practice Advisory Board (John Does #4-11) refuse to accommodate his religious practices in a number of ways. These included prohibiting prisoners from wearing their religious medallions (Thor's Hammers and Volknuts) on visits at Menard or during a transfer between prisons or to court; prohibiting congregate worship for monthly observances (while allowing other faiths to engage in group worship); prohibiting adherents from possessing runestones or runic flash cards (while permitting other religious groups to have such items as tarot cards); and refusing to serve him a religious diet, especially for feast days (while honoring dietary requests for prisoners of other faiths). (Doc. 1, pp. 12-13). These actions violated Plaintiff's First Amendment right to practice his faith, violated his Fourteenth Amendment right to equal protection, and violated the RLUIPA. *Id.* Further, Baldwin and John Does #4-11 denied Plaintiff due process when they refused to respond to his grievances and letters on this subject. Finally, Baldwin and John Does #4-11 retaliated against Plaintiff for filing grievances over the refusal to accommodate his religious practices, by refusing to respond to his grievances. (Doc. 1, p. 13).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory

and punitive damages.  (Doc. 1, pp. 14-15).

<u>**Merits Review Pursuant to 28 U.S.C. § 1915A**</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following 16 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:**    Butler, Lashbrook, and John Doe #1 (Mail Room Supervisor) maintained a policy to open all incoming mail from the Illinois Attorney General, and John Does #1 and #13 opened 21 of Plaintiff's incoming letters from that office outside his presence between April 2016 and January 2017;

> **Count 2:**   John Does #1 and #13 improperly opened Plaintiff's mail from the Illinois Attorney General, and delayed processing his regular mail, in retaliation for Plaintiff's litigation and grievance activity, thus violating Plaintiff's First Amendment rights;

> **Count 3:**   In February 2016, Bradley and Butler rejected a book Plaintiff ordered, *The Truth: An Uncomfortable Book about Relationships* without a legitimate penological reason for denying the publication, in violation of the First Amendment;

> **Count 4:**   In June 2016, John Doe #14 rejected 4 football preview magazines mailed to Plaintiff by his brother, in violation of the First Amendment;

> **Count 5:**    John Doe #14 rejected Plaintiff's 4 football preview magazines in retaliation for Plaintiff's grievances/complaints against mail room staff;

> **Count 6:**   On July 20, 2016, Bradley, Shemonic, and Butler rejected Plaintiff's June 2016 issue of *Prison Legal News*, in violation of the

7

First Amendment;

**Count 7:** On April 14, 2017, John Doe #3 rejected Plaintiff's book, *Tools for Titans*, in violation of the First Amendment;

**Count 8:** John Doe #3 rejected the *Tools for Titans* book in retaliation for Plaintiff's protected grievance and litigation activity;

**Count 9:** On April 28, 2017, John Doe #2 rejected 5 religious greeting cards ordered by Plaintiff, in violation of the First Amendment and the RLUIPA;

**Count 10:** John Doe #2 rejected the religious greeting cards in retaliation for Plaintiff's protected grievance and litigation activity;

**Count 11:** On March 21, 2016, Rees prohibited Plaintiff from receiving visits from his brother, Joseph Kruger, in violation of the First Amendment;

**Count 12:** On June 7, 2017, Jones prohibited Plaintiff from receiving visits from his brother, Joseph Kruger, in violation of the First Amendment;

**Count 13:** Plaintiff was denied the right to have confidential telephone calls with his attorney on 2 occasions (once in 2016 and once in 2017) because the legal call booths constructed under the direction/authority of Butler and John Doe #12 allowed other prisoners and staff to overhear Plaintiff's conversations;

**Count 14:** Baldwin, Harner, Keim, Butler, Lashbrook, and John Does #4-11 refused to allow Plaintiff to fully practice his Odinism-Asatru religious faith, by prohibiting him from wearing medallions or possessing certain items, disallowing congregate worship, and denying his religious diet, in violation of the First Amendment, Fourteenth Amendment, and the RLUIPA;

**Count 15:** Baldwin and John Does #4-11 denied Plaintiff due process and retaliated against him, by refusing to answer his grievances and letters complaining about the religious discrimination;

**Count 16:** Kennell, while Plaintiff was at Pontiac Correctional Center in October 2015 and before, refused to allow Plaintiff to fully practice his Odinism-Asatru religious faith, by prohibiting him from wearing

religious medallions during his transfer between prisons, and/or prohibiting his possession of certain items, disallowing congregate worship, and/or denying his religious diet, in violation of the First Amendment, Fourteenth Amendment, and the RLUIPA.

## Severance of Claims & Defendants

As part of the screening process, the Court must consider whether the above claims and parties may properly proceed in the same action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[4] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Severance of unrelated claims is encouraged, and the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436

---

[4] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017).

(7th Cir. 2017).  *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).  Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

Plaintiff's Complaint presents a morass of claims which arose from a number of distinct transactions/occurrences.  Counts 1 and 2 concerning the opening of mail from the IAG may properly proceed together, and shall remain in this original action.  The remaining claims shall be severed.

Counts 4 and 5 both concern the June 2016 rejection of football magazines, but this incident has nothing to do with the other counts in the case, and no other count involves John Doe #14.  Similarly, Counts 7 and 8 (John Doe #3) belong together, as do Counts 9 and 10 (John Doe #2) – but each set of claims arose from a distinct incident and involves (so far as Plaintiff knows) a different John Doe.  Count 11 involves only Rees, and did not arise from the same transaction/occurrence as did Count 12 against Jones.  Pursuant to Rule 20, these 5 sets of claims (Counts 4-5, Counts 7-8, Counts 9-10, Count 11, and Count 12) involve distinct Defendants, did not arise from the same transaction or occurrence, and must therefore be severed into 5 separate cases.  Similarly, any claim that Plaintiff has against Pontiac Defendant Kennell must have arisen at Pontiac, in a separate transaction from the religious claims in Count 14 which arose at Menard.  Therefore, Count 16 against Kennell shall also be severed into a

separate case.

The remaining claims also arose from distinct incidents, and additional severance shall be required. However, certain of the claims that share common Defendants may be properly joined pursuant to Rule 18.

Count 3 involves a February 2016 rejection of a book by Bradley and Butler. Count 6 arose from a distinct July 2016 rejection of *Prison Legal News*, against Bradley, Butler, and Shemonic. Rule 18 permits a Plaintiff to join any other claim he has against a Defendant who is properly in the action, even if the additional claim is unrelated to the first claim. Rule 18 thus permits Count 3 against Bradley and Butler to be properly joined with Count 6, even though the 2 claims arose from distinct incidents.

Count 14 (Baldwin, Harner, Keim, Butler, Lashbrook, and John Does #4-11) and Count 15 (Baldwin and John Does #4-11) may proceed together, because each count relates to the alleged denial of Plaintiff's right to engage in his religious practice, and they share common Defendants. Butler and Lashbrook are named in Count 14, and are also named in Count 1. However, the overlap of these 2 Defendants does not serve to link Count 1 and Count 14 in the same action as to the remaining Defendants (Baldwin, Harner, Keim, and John Does #4-11). Because Counts 1 and 14 arose from distinct and unrelated transactions/occurrences, it is improper under Rule 20 to join John Does #1 and #13 from Count 1, in the same action as Baldwin, Harner, Keim, and John Does #4-11 from Count 14.

The merits review of Counts 1 and 2 is included below, and Count 1 shall be dismissed. Count 2 shall then proceed in the instant action. All remaining claims against Butler (Counts 3, 6, 13, and the portion of Count 14 involving Butler) shall then proceed together in one severed case, which shall also include other Defendants.

To summarize, Plaintiff's claims shall be severed as follows:

**First severed case:** Count 3 (Bradley and Butler), Count 6 (Bradley, Shemonic, and Butler), Count 13 (Butler and John Doe #12[5]), and the portion of Count 14 that is against Butler.

**Second severed case:** Counts 4 and 5 against John Doe #14.[6]

**Third severed case:** Counts 7 and 8 against John Doe #3.

**Fourth severed case:** Counts 9 and 10 against John Doe #2.

**Fifth severed case:** Count 11 against Rees.

**Sixth severed case:** Count 12 against Jones.

**Seventh severed case:** Count 14 (Baldwin, Harner, Keim, Lashbrook, and John Does #4-11), and Count 15 (Baldwin and John Does #4-11).

**Eighth severed case:** Count 16 against Kennell. Because this claim arose at Pontiac, this severed case will be transferred to the Central District of Illinois

---

[5] The inclusion of John Doe #12 with the claims (Counts 3, 6, and 14) which do not relate to him may violate Rule 20. Therefore, when this individual is identified by name, further severance may be required. As the identity of John Doe #12 is presently unknown, this Defendant shall be included in the first severed case at this time.

[6] The Court recognizes the possibility that when Plaintiff ultimately identifies John Does #2, #3, #13, and #14, all of whom dealt with incoming mail and/or publications, it may turn out that one or more of these unknown parties is the same individual. If that is the case, the Court will consider consolidating any cases against the same person which were previously severed, and adjusting filing fees accordingly.

after it is opened and assigned a new case number.

The claims in each severed case shall undergo the required § 1915A merits review after the new case number and judge assignment has been made. Plaintiff shall be assessed a new filing fee for each severed case.

**Merits Review of Counts 1 and 2**

**Dismissal of Count 1 – Opening of Mail from Attorney General**

Plaintiff characterizes his incoming letters from the Illinois Attorney General as "legal mail," and notes that IAG letters are defined as legal mail in the relevant section of the Illinois Administrative Code. (Doc. 1, p. 9). He then asserts that his constitutional rights were violated when 21 of his incoming letters from the IAG were opened outside his presence. However, this correspondence does not fall within the category of privileged attorney-client communication that raises constitutional concerns if it is opened by a prison official before being delivered to the inmate-recipient.

An inmate's right to have certain mail opened only in his presence applies only to correspondence between the inmate and an attorney who either is representing him, or from whom the inmate is seeking legal representation. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). Correspondence between an inmate and his attorney, or mail concerning potential legal representation, is given heightened protection because interference with such mail has the potential to hinder the inmate's right of access to the courts. *Id.*; *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Further, even if a letter

comes from the inmate's lawyer, the envelope must be clearly marked as containing privileged attorney-client correspondence in order to receive the special treatment of being opened only in the presence of the inmate-recipient. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010).

Mail from the Illinois Attorney General does not fall into the category of legal mail between an inmate and his lawyer, because the Attorney General's office would be representing the defendants in Plaintiff's lawsuits, not Plaintiff. As such, correspondence from this source may be opened and inspected outside Plaintiff's presence without violating his constitutional rights.

Moreover, Plaintiff does not assert that any of the IAG envelopes were marked in such a way that would alert prison staff to the need to open them only in Plaintiff's presence. In order for privileged attorney-client correspondence to be held for opening only in the inmate's presence, the envelope must be clearly marked by the sender with a warning that the letter is "legal mail," "privileged legal correspondence," or some similar notice that draws attention to its confidential nature. *Kaufman*, 419 F.3d at 685-86 (citing *Wolff*, 418 U.S. at 577). The mere fact that an envelope bears the return address of a law office is not sufficient to alert prison officials that the contents are privileged and should be opened only in the presence of the prisoner-recipient. Not every letter from a law office necessarily represents privileged attorney-client communications. *See Guajardo-Palma*, 622 F.3d at 805-06; *Kaufman*, 419 F.3d at 686.

14

Even if Plaintiff's mail had been improperly opened, he has not alleged that his ability to litigate his pending civil rights cases was prejudiced in any way by the opening of his letters from the Attorney General. In order to maintain a claim for denial of access to the courts, a plaintiff must demonstrate some hindrance to his ability to prosecute a meritorious legal claim. No constitutional claim is stated unless the element of prejudice is met. *See Guajardo-Palma*, 622 F.3d at 805-06 ("whether the unjustified opening of [attorney mail] is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation .... [w]e think [as with claims challenging the adequacy of a prison's library or legal assistance program] there must likewise b[e] a showing of a hindrance") (citing *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997)); *Kaufman*, 419 F.3d at 686 (prisoner "offered no evidence that his ability to litigate any matter" was affected by the opening of mail from attorneys).

Finally, if this "legal mail" was opened in violation of the procedure set forth in the Illinois Administrative Code, such a violation does not amount to a constitutional claim. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

For these reasons, **Count 1** against Butler, Lashbrook, and John Doe #1 for maintaining a policy to open all incoming mail from the Illinois Attorney General, and against John Does #1 and #13 for opening Plaintiff's IAG letters

outside his presence, fails to state a claim upon which relief may be granted. Count 1 shall be dismissed with prejudice.

## Count 2 – Retaliation

Plaintiff also alleges that John Does #1 and #13 opened his IAG letters, and delayed processing his regular (non-"legal") mail, in retaliation for Plaintiff's litigation and grievance activity. He does not elaborate on the alleged delays affecting his correspondence.

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff connects the alleged retaliation to the lawsuits he brought against prison officials before his transfer to Menard. As well, he claims that he

submitted grievances and made other complaints against mail room personnel, and alleges that retaliation by John Does #1 and #13 ensued. At this early stage of the case, Plaintiff's retaliation claim in **Count 2** survives § 1915A review, and may proceed in this action. However, the John Doe Defendants must be identified with particularity before service of the Complaint can be made on them.

Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, while no viable claim has been stated against Menard Warden Lashbrook in her individual capacity, she shall remain as a Defendant in her official capacity only. In that capacity, she shall be responsible for responding to discovery aimed at identifying these unknown Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the John Doe #1 and/or #13 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

**COUNT 1** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendant **BUTLER** is **DISMISSED** from this action with prejudice. All claims against Defendant **LASHBROOK** in her individual capacity are **DISMISSED** from this action with prejudice, and **LASHBROOK** shall remain as a Defendant in her official capacity only, as Warden of Menard Correctional Center.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's claims in **COUNTS 3-16**, which are unrelated to the remaining claim in **Count 2**, are **SEVERED** into 8 new cases as follows:

**First Severed Case: Count 3** against Bradley and Butler for rejecting Plaintiff's book (*The Truth: An Uncomfortable Book about Relationships*); **Count 6** against Bradley, Shemonic, and Butler for rejecting Plaintiff's June 2016 issue of *Prison Legal News*; **Count 13** against Butler and John Doe #12 for denying Plaintiff the ability to engage in private telephone conferences with his attorney; and the portion of **Count 14** that is against Butler, for violating Plaintiff's rights under the First and Fourteenth Amendment and the RLUIPA to freely practice his religion;

**Second Severed Case: Counts 4 and 5** against John Doe #14 for rejecting 4 football preview magazines in June 2016, and in so doing, retaliating against Plaintiff for his complaints against mail room staff;

**Third Severed Case: Counts 7 and 8** against John Doe #3 for rejecting *Tools for Titans* on April 14, 2017, and in so doing, retaliating against Plaintiff for his grievances and litigation activity;

**Fourth Severed Case: Counts 9 and 10** against John Doe #2 for rejecting Plaintiff's religious greeting cards on April 28, 2017, and in so doing, violating the RLUIPA and retaliating against Plaintiff for his grievances and litigation activity;

**Fifth Severed Case: Count 11** against Rees, for prohibiting visits from Plaintiff's brother on March 21, 2016;

**Sixth Severed Case: Count 12** against Jones, for prohibiting visits from Plaintiff's brother on June 7, 2017;

**Seventh Severed Case: Count 14** against Baldwin, Harner, Keim, Lashbrook, and John Does #4-11 for violating Plaintiff's rights under the First and Fourteenth Amendments and the RLUIPA to freely practice his religion, and **Count 15** against Baldwin and John Does #4-11 for denial of due process and retaliation because they refused to answer Plaintiff's grievances;

**Eighth Severed Case: Count 16** against Kennell, for violating Plaintiff's rights under the First and Fourteenth Amendments and the RLUIPA to freely practice his religion while Plaintiff was at Pontiac Correctional Center in October 2015 and before.

The claims in each newly severed case shall be subject to a merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)     This Memorandum and Order
(2)     The Original Complaint (Doc. 1)
(3)     Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
(4)     Plaintiff's motion for recruitment of counsel (Doc. 3)

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case. No service shall be ordered on the Defendant(s) in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the ***only claim remaining in this action is COUNT 2 against Defendants LASHBROOK (Official Capacity Only), JOHN DOE #1, and JOHN DOE #13***, for retaliation. This case shall now be captioned as: **JOSHUA W. KRUGER, Plaintiff, vs. LASHBROOK, JOHN DOE #1, and JOHN DOE #13, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **BALDWIN, BUTLER, REES, JONES, BRADLEY, SHEMONIC, HARNER, KENNELL, KEIM, JOHN DOE #2, JOHN DOE #3, JOHN DOES #4-11, and JOHN DOE #12** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 2**, which remains in the instant case, the Clerk of Court shall prepare for Defendant **LASHBROOK (Official Capacity as Menard Warden)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE #1 and #13** until

such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3), and a plan for discovery aimed at identifying the unknown defendants with particularity.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for

want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.04.08
08:08:21 -05'00'

_____
United States District Judge